May it please the court. Good morning, your honors. My name is Ethan Ballow, and this morning I speak for Clifford Winkles. For the past 11 years, Mr. Winkles has been on what can best be described as a Kafka-esque odyssey. To have somebody, anybody, listen to his claims. And he thanks the court today for giving him his opportunity. Of course, we have to start with the threshold question this court confronts in every appeal. Does the court have jurisdiction to hear from Mr. Winkles? The government concedes that Mr. Winkles has raised on what is on appeal is a legitimate Rule 60B motion. As the court knows, Rule 60B permits in extraordinary circumstances the court to address the defect in the proceedings that somehow inhibited the litigant from having a full and fair opportunity to have... Look at me, counsel. I want to be sure I understand what you're saying the government has conceded. I did not understand the government to concede what you just said. Do you want to refine that a little bit in the real issue, whether you need a certificate of appealability in this case? Oh, certainly. But the threshold question, the motions panel said one is a legitimate Rule 60B motion or Rule 59. If the answer is yes to that question, it's not a disguised successive or second petition, then is a COO required. Okay, I get the context. And the government absolutely agrees that it's a legitimate Rule 60B motion because it attacks the defects in the proceeding and the merits before his underlying habeas are not before this court and may not be reached today at all. He cannot get relief from this court on the merits. So the second question then becomes... And everybody's agreed that this isn't a Rule 59E motion. Yes, he was out of time on that. Okay, so we got those two down. Now we're ready for you. So now we get to the question, to hear the Rule 60B, does he need a certificate of appealability? And the answer to that question is no, Your Honors, for a couple of reasons. The two Supreme Court cases that are going to give us the most guidance are going to be Gonzales v. Crosby, which is 2005, and Harbison v. Bell, which is 2009. Well, before you get to those, we have a case, Lynn v. Blodgett. Lynn v. Blodgett was a case which dealt with 60B motions in a CPC situation. Yes, Your Honor. And we required a certificate for those appeals, and since then we've had AEDPA. Langford v. Day seems to agree with Lynch, and it was decided after AEDPA. So I haven't got enough authority to say, you know, even if I want to get around and talk about Harbison or Gonzales and wiggle around on the Supreme Court, that really I've got some precedent right in front of me. You do, Your Honor, but Lynch was bad when it was decided. Now, just a minute. That doesn't have anything to do with what I've got to do, bad when it was decided. Whether it's bad, three judge panelers, a lot of three judge panels on this circuit I don't think do good work, but that doesn't mean I can get away from what they have to do. No, you don't, but there's a couple of reasons why Lynch doesn't control here. One, as Your Honor's correct, Lynch dealt with a prior statute. But I don't see AEDPA in any way taking away from the CPC. It does in a way that Lynch was decided. Lynch determined a textual question set that addressed a final order. And the CPC standard, just like the COA standard, addresses the final order. And there's a difference, and the Supreme Court in Harbison said you don't... So if I don't buy that argument, then they do apply? No, if you don't buy that argument, Lynch's further problem is it decided, as opposed to having a textual interpretation of the final order, it said that the reason it would apply a COA standard for a CPC was because AEDPA's policy was to permit discretionary appeals. And while that's correct, it's correct against Lynch. What AEDPA did was not permit discretionary denials of appeals. AEDPA gave a defendant or an appellant, a petitioner like Mr. Winkles, one, the absolute right to this court's jurisdiction if he makes a substantial showing of the denial of a constitutional right. And under Lambright, this court's definitive interpretation of SLAC, that means not frivolous, every resolution, every doubt gets resolved for the appellant. There is discretion to hear a COA appeal, even if there's no substantial right, and this comes after Lambright as well. This is SLAC and Miller-Ell, which says, if the court, even despite no substantial showing, believes the issues presented merit further attention. So while there is discretion, it's in the favor of the petitioner. And what Lynch held was AEDPA was designed to have discretionary appeals. This court could reject discretionary appeals against a petitioner, and that's not true. Isn't the argument that you're making one which would, in a sense, eviscerate the effect of AEDPA and its limitations on second and successive appeals? This seems like kind of a roundabout way of getting around AEDPA's strictures. Can I tell you why the answer is no for three reasons, Your Honor? Okay. One, it's no because the threshold question, and it's the Crosby question, Gonzales v. Crosby, is if it's a second and successive petition, it's by definition not a legitimate 60B motion. And that's what the Supreme Court decided in Crosby. So by conceding a threshold issue, Mr. Winkles is not getting an end around it. Anyone like Mr. Winkles bringing a legitimate 60B motion is not doing an end around. Second, Gonzales teaches us that Rule 60B does not disturb the judgment of the district court. It's not under attack here. And what AEDPA designs is before you may attack a judgment, before an appeal of an attack of a judgment may be decided, where this court could upset a judgment, you must make the substantial showing. But as Stone v. INS teaches, the judgment of the district court denying habeas relief is not an issue in this case. Your Honors can't help me with that. You can't decide that his issues are so good he gets relief today. All you can do is go back and direct the district court to consider whether he has presented extraordinary circumstances such that the district court could decide in the first instance to reopen that finality. The third reason it doesn't apply. But didn't the district court deny the COA in this particular matter? In this one, no. I think the merits panel deferred a ruling and sent it to this court. Well, I agree what the merits panel did, or what our panel did. They said we had to decide whether the second motion was a legitimate 59E motion or a 60B motion, and if so, a COA was needed. But on September 18, 2013, we remanded this case to see if a COA was warranted, and the district court already denied. And so now at this point, we're just determining if we don't agree, right? You're determining the three questions are, one, does he need a COA, and we would contend that Harbison's clarity about the textual analysis says no. I understand where you want us to go. I'm suggesting that at this point, why would we remand? The district court's already denied COA. Oh, I wouldn't remand for a COA. I think he doesn't need one, but if you decide you need to reach the issue, he's definitely presented debatable issues. There's been so much ink spilled about it. Let me ask you about that ink spilled. You're talking about amended petition. The original petition was denied. Yes. COA was denied. Circuit affirmed it. Yes, it was. Okay. Then he comes up with this so-called amended petition. Where is it? That's a good question. 2008 version. There's a 2013 version. What is it you claim he actually tended to the court? We contend he tended to the court the scope of the Pinkerton claims in August of 2015. We know that the district court doesn't lodge everything because on this very appeal, we noted that the district court on March 2008 denied him. But he doesn't have a copy of what he sent? No, he does not. So you're manufacturing this so-called amended petition? Mr. Winkles. How can you do that? Well, under Heiser, he attested that what he filed was filed. That's a fact question. No, no, no. Yes, Your Honor. What am I guessing wrong, Your Honor? Well, he said it in a brief. If you look at it, we'll go back to the Rule 3 question. I mean, how can this be a mailbox mail-in when he doesn't even know what he mailed? Well, he filed a declaration. He's making up that I mailed something. He filed a declaration. And I've reconstructed something. He filed a declaration from another defendant, from another prisoner, and he's made a factual showing. But, Your Honor, as the government proves— Well, that factual showing doesn't satisfy Rule 3. Do you concede that? No, I do not concede that, Your Honor. He says it has to be under oath. He didn't say under oath that he submitted it with timely and with the postage. His amended declaration to prisoners says that. His declaration says that. And the original one was lost. The prisoner—the amended prisoner declaration doesn't even say that. He says he had something. He put some stamps on it. He doesn't say it was proper postage. He doesn't know what it was. He knows there were some papers. The prison lawyer's declaration meets all the standards of that permissive review. I see I have a minute. May I reserve my time? You want to reserve your time? I would. Thank you, Your Honor. Okay. Let's hear from the government. May it please the Court, Nancy Spiegel for the United States. Your Honors, the government contends that a certificate of appealability is required in this case and is required in all appeals from 60B motion denials. There's two reasons for that. One is statutory. One is policy. The statutory reason is the language of 2253C2. I really think we got your argument well in mind. I guess the biggest problem I have is Harbison for your argument. So distinguish Harbison and how we can distinguish Harbison and not affect quite a bit of this is tough on me. Okay. I think the biggest distinguishing factor is that Harbison did not deal with any sort of a habeas proceeding at all. It dealt with a motion for new counsel. And a Rule 60B motion is a habeas proceeding in the sense that it is a post-judgment motion that deals with the merits. Well, it isn't habeas or it wouldn't be a 60B. Well, I think within the language of 2253C2, it does qualify as a habeas type of proceeding in the sense it's not a in the sense that it does attack the 2255 ruling. And Harbison didn't, in my view, it didn't pretend to have any effect on something like a 2255 or a 60B. And the court didn't address 60B there, and I believe it's limited to its facts. So that's the only place we're going to have this situation where a COA is not required when you want to enlarge the amount of time that counsel or the amount of things that counsel can do for the petitioner? Is that what you're arguing? No. I'm just arguing that it's not relevant to the issue here because. Well, but if you take Harbison as it is and you look at what it said, unless you want to say it only deals with what counsel can do and that it doesn't need a COA, what other things would it apply to if it wouldn't apply to a 60B? Well, I don't think the court, you know, was intending to address that. I think the Harbison court was intending to limit it to the situation where you were bringing a motion for new counsel because it had nothing to do with the 60B. So you're saying, again, so you're saying that Harbison went to the Supreme Court and at the Supreme Court level, Harbison courts only said, well, counsel, you can get away without a COA, but everything else has to have a COA. I mean, that seems to be the effect of your argument. Well, I think the first part of what Your Honor just said is true, but I don't think the court, you know, reached the second part. I'm trying to understand Harbison in the context of Gonzalez, and I'm trying to say to myself, okay, Harbison had to do with counsel and whether counsel could do all the things that we first determined counsel ought to be able to do. But in this particular matter, it's a similar type motion. It's not really in the habeas context, but it's a motion that to some extent has some finality to it, only because there was a civil proceedings, all civil proceedings, they're final. But I'm still having a tough time trying to distinguish what Harbison, you're saying, distinguish it by leaving it on its facts. And I say, is that only because it's counsel? Is that the only facts it pertains to? Well, perhaps if we looked at it, you know, from the other side, I think it, maybe Harbison applies to other types of motions. What? Well. See, that's the, when you get to the what, that's where you got me. I'm wondering why not this one? Because, well, I think one of the most persuasive facts here is that Harbison was decided approximately six years ago, and there's been no matter, at least no published opinion that I could find. And all of the circuits, other than this one and the Fifth Circuit, have before Harbison and still do after Harbison, require a COA for an appeal from the denial of the 60B motion. Does the fact that Harbison involved a death penalty, in other words, is death different? Is that what we're dealing with here? I'm not sure how to answer that. Well, let's just say for a moment, putting Harbison to the side. As you point out, every circuit except the Fifth Circuit has adopted the position that the government appears to be advocating in this case. Were we to agree with the government, is there any particular approach that you would like us to take to this? For example, the Second Circuit in Kellogg v. Strack has set forth a two-pronged test for the granting of a COA in a situation like this. Is that the type of approach that the government would advocate were we to adopt the government's position? That's exactly the approach we would advocate, yes, Your Honor, the two-pronged approach. And that's because if I look at Lynch, and Lynch was decided, I realize, in another era. Lynch doesn't talk about a two-pronged approach. Lynch talks about a substantial showing that the district court abused its discretion. That's my precedent right now. Do I have other precedent which says I have to change to what the Second Circuit has suggested? Well, I think we would rely on Kellogg v. Strack. Okay. And I think because of the nature of the 60B, which is sort of a hybrid kind of a claim, I think that the two-pronged approach would be the fairest. Well, 60B was in Lynch, and we didn't talk about that. That's true. That's true. That's true. But I think requiring both a showing that the district court abused its discretion in the procedural matter, as well as a substantial showing of the denial of the constitutional right would be the proper standard. So that's the government's argument? Yes, Your Honor. Okay. Does the government take the position that this circuit has no precedent directly on point at this point? Yes. Okay. The court has no further questions. The government will submit. I'm curious if we reach the issue on the prison mailbox rule. Okay. You argue that he didn't diligently pursue things, but you have this case in this circuit, Hoosars, that says 21 months isn't unusually long to wait for the court to rule on something, and this isn't even that long a period of time. How do you get around Hoosar, or Hoosar, or however you pronounce it? Well, in terms of the mailbox rule argument, our argument is more that he failed to comply with the statutory requirements. Okay. I got that argument. Okay. I've covered that with the violence counsel. In other words, you agree that he has to have. Well, but you concede that he, you concede at one point the amended petition from 2008 was proper? Or what is it you concede? We're conceding only that his claim that he allegedly attempted to file the amended petition in August of 2005 is correct. So we're not conceding anything beyond that. And what good does that do? We don't have what he purported or attempted to file. Right. Can he reconstruct it, as he's done here? I was under the impression that what the documents contained at excerpt of record 221 to 400 were the documents that he had attempted to file as an amended petition in August of 2005. If that's not what. . . But he has two versions of that in the record, one from 2008 and one from 2013. They're not the same. That's true. That's true. So which is it you. . . what do you think the record is? I don't think that's, you know, for me to decide. You know, I don't think that's. . . Well, it would be the government's idea that there is not a correct. . . There's neither one. But I think we were trying to give every benefit of the doubt, you know, to Appellant's argument and just saying that, you know, if this was the document or if he had. . . We're going to just say that for the sake of argument, if he had tried to file something in August of 2005, it still wouldn't have been proper for all the reasons that we explained in our brief. Under either version, 2008 or 2013? Under either version. Yeah, that's what my question is. For whatever reason, if we look at those versions in isolation, 2008, 2013, admittedly different, are you saying that they fail under either version? It really doesn't matter which one, if either was a valid filing. Yes. Yes, Your Honor, we are. I'm going to. . . Thank you. I want to ask one other question. Sure. Because I searched the record for it and I wondered if the government ever found it. Did the defendant ever ask the district court to reopen the time for an appeal or to reenter the judgment against him for the purpose of appealing it? Yes, he did. Where? Let's see. I have the chronology right here. I didn't find it. It seems to me that we're left with Sue Espontae construing one of the motions as his motion to reopen. I think his first Rule 60B motion that was filed May 6, 2008. Okay. He asked the court to set aside the denial of the 2255 and consider the merits of the amended petition. But I think Your Honor is correct. He never asked for permission to file an appeal from the denial of the 2255. Because that has a lot to do, really, with whether he has any right to reopen the appeal time at all, right? Right. Okay. Thank you very much. Okay, let's hear a rebuttal from the petitioner, please. Thank you, Your Honor. A few points, if I may. I want to start by quoting Gonzales v. Crosby. When no claim is presented, there is no basis for contending that Rule 60B should be treated like a habeas corpus application. This is right after the court tells us in Gonzales v. Crosby which AEDPA did not expressly circumcise Rule 60B and appeals to finality do not apply for Rule 60B because of its nature. Applying, not requiring a COA is not consistent because it will not permit an appeal on the merits. I want to note that I think my colleague overstates the circuit split. The third and the seventh do not require a COA. They've assumed without deciding, as this court has on other occasions. I do believe, Judge Smith, that Mackey permitted the district judge to reopen the time. I think his first 60B, if you look at it This really isn't a Mackey situation. Oh, I believe it is. It's not a notice situation. What Mackey holds is the 180-time deadline under Rule 4 doesn't apply if Rule 60B is granted for extraordinary circumstances. And in this case And the only extraordinary circumstance in Mackey was Attorney abandoned When the counsel abandoned. This is the very case of Stein. Failed to receive a timely notice of appeal. Did not receive the notice of entry of the order from which they sought to be appealed in a pro se case. Can I tell you why Stein doesn't apply, Your Honor? Why it's not like Stein is in this case it's not a notice challenge under 77D. My adversary, Mr. Winkle's adversary, kept his papers from him. Kept transcripts, kept orders, withheld. Steinied him. And when your adversary takes away your ability to litigate, that's extraordinary. So just like Mr. Mackey's client couldn't understand that he had been abandoned and had no basis This isn't that the district court failed by providing notice under 77D Or that Mr. Winkle's failed by not checking the docket. Mr. Winkle's was held in solitary confinement and admittedly denied his papers for years on end pursuant to policy. That is Mackey. It's extraordinary and this court need not resolve that. This court needs to determine whether the district court when presented with a B-1 motion Which was a mistake, an inadvertence, and a B-6 motion, extraordinary circumstances Denied the first rule 60B under B-2, no newly discovered evidence, not a ground raised. Before he did that, Judge Prager said the only thing I can do is give you a motion reconsideration And then never let him file it. What the district court should have done is considered the B-1 and B-6 factors. When he made that mistake, Mr. Winkle's went back to Judge Prager and said Listen, you've misconstrued my motion, I've never filed a motion for consideration I asked for more time to prepare it and you denied it as if I presented the merits, which I never have. That's the defect. I'm absolutely over time. Let me ask my colleagues if either has any more questions. I have no further questions. Thank you very much, we appreciate your argument. The case just argued is submitted. Thank you, your honors.
judges: Lamberth, Smith, Smith